Cushing, J.
The indictment in this case charges, that Jacob Theiss, being the superintendent of the infirmary of Butler county, Ohio, and being charged as such superintendent with the receipt of public money in the sum of $903.80, belonging to said county, did unlawfully and fraudulently embezzle and convert to his own use said money, which had then and there come into the possession and custody of the said Jacob Theiss by virtue of *413 hi's said office, employment and position, and in his discharge of the duties thereof, and so that the said Jacob Theiss is guilty in the manner aforesaid of the crime of embezzlement of public money, so as aforesaid by him converted and .used.
The facts developed at the trial were that The'iss sold produce from the infirmary farm,.of which he was superintendent, about October, 1917, collected the money for same, but. had not paid it into the county treasury at' the date of the indictment, May, 1918. Theiss admitted the sale of the produce and the collection of the money, but claimed and testified that on receipt of the money he turned it over to his wife for safekeeping; that she placed it in envelopes and locked them in a trunk in the house occupied by them on the infirmary farm; that he intended to pay the same into the treasury; that he did not loan, deposit or use the same; and that he at no time intended to use or appropriate it to his own use or deprive the county of the money. On these facts the court charged the jury:
“The Court therefore says to you that if Jacob Theiss did sell products of the infirmary farm and did not pay the money into the treasury as the law requires, as I have pointed out to you, but on the othér hand knowingly and purposely, kept the money in his house from on or about October, 1917, until the date of this indictment in May, 1918, keeping it in his house in envelopes placed in a trunk therein, or keeping it elsewhere therein, that he had no lawful right to do so, and if he did so knowingly and purposely and wilfully and thus-deprived the county of the use and benefit of said1 money during said period, that would'be exercising- *414 dominion over that' property in exclusion of the rights of the owner, which is Butler County. He would be exercising an act of dominion over that money inconsistent with the right of the owner, Butler County; he would be doing an unauthorized act depriving Butler County of said money for said time, and that would be a conversion on his part of the money so kept and held by him, and if that state of facts has been proved or admitted, then the State has proved this averment of the indictment, to-wit: that he did convert the money so kept and held by him. This is true even though he intended to finally pay it into the treasury of Butler County, and even though he be now ready and willing to pay it into the County Treasury.”
After the jury retired to consider the case, it returned and requested further instructions. The record shows the following:
The Foreman: “There is a question in the minds of some o£ the jurymen as to what constitutes intent.”
The Court: “Can you make that question any clearer?”
The Foreman: “If Mr. Theiss held the money, whether he used it for his own personal expenditures, or for himself, or whether he simply kept it, the question arises did he do that with the intention of defrauding.the County? That is the point.”
The Court:- “Now, Gentlemen, answering your question, if the. State has proved beyond all reasonable'doubt that the defendant knowingly, intern tionally, and purposely; used the money described in the indictment,, or any part of it, for his own private use/ that would -be a conversion .of. it,- and *415 that would be embezzlement, provided the other elements of the crime are proved, even though he had no intent at the time to defraud the county out of the money.
“So I say to you further that if the State has proved beyond all reasonable doubt that the defendant knowingly, intentionally, and purposely, kept the money in his house from about October, we will say, until the date of this indictment, and thus deprived the county of the use of that money, that would be a conversion and embezzlement, even though he had at the time no intent to defraud the county out of the money, and intended to later on pay the money into the treasury, provided, of course, the other elements of the crime are proved.
“You may now retire, Gentlemen.”
The indictment' charges that Theiss embezzled and converted to his own use money belonging to the county. The court charged the jury when it returned for instructions that if he kept the money in his own house and deprived the county of the use of that money, that would be a conversion and embezzlement, even though he had at the time no intention to defraud the county out of the money. and intended to later on pay the money into the county treasury.
Section 289, General Code, requires the custodian of such funds to pay the same into the treasury each twenty-four hours. There is no penalty provided in this statute for failure to so do, neither does Section 12873 make it an offense to hold such public money.
Section 12873 specifies five acts which are defined as punishable offenses — embezzlement on the *416 part of one charged with the collection, receipt, safe-keeping, and disbursement of such public money:
1. To convert to his own use.
2. To convert to the use of any other person, etc.
3. To use by way of investment, etc.
4. To loan with or without interest, etc.
5. To deposit with a-company, etc.
In its -charge, above quoted, the court instructed the jury that the keeping' of the money in his house, thus depriving the county of the use of that money, would be a conversion and embezzlement.. This was error.
In the case of The State of Ohio v. Baxter, 89 Ohio St., 269, Baxter took the money, used it to pay his own debt, and later put other money of equal value in its place. The conversion and embezzlement of the money was completed as soon as Baxter used it for his own purpose.
In The State of Ohio v. Cameron et al., 91 Ohio St., 50, the court says, at page 56, referring to the Baxter case:
“We held that (1) the temporary appropriation of the public- money by an officer to his own use, with the intention of restoring it, is a conversion within the meaning of that statute; (2) that he thereby violates that statute though he 'be -not a defaulter, and (3) the return of the money will not expunge the guilt.” -
In The State of Ohio v. Gross, 91 Ohio St., 161, the court uses this language at page 165:
“It is sufficient to say, however, that there was ample evidence to go before the jury upon this issue of- f-act as -to -when the intention to • appro *417 priate was formed. Like the question of agency, the question of intent is purely a question of fact, with which the courts have nothing whatsoever to do in the trial of a criminal cause. Such questions are to be determined by juries.”
A necessary ingredient in the crime of embezzlement is the intent or animus furandi to be determined by the jury.
“Still we may infer from the authorities, and from the reasons inherent in the question, that if the servant intentionally does with the property under his control what one must intend to do with property taken to commit larceny of it, he embezzles it, while nothing else is sufficient.” State v. Baxter, supra, at 273.
Had the court instructed the jury that holding of the money by Theiss from October to May, and his failure to pay it into the treasury, as required by law, could be considered evidence of his intention to convert the money to his own use and thereby embezzle it, and that under Section 13674, General Code, the failure to pay over the money constituted prima facie evidence of its embezzlement, these things to be considered in connection with the fact that within the time stated he had collected and paid into the treasury other money collected by him, that would have left for the determination of the jury the question of fact as to whether or not Theiss had appropriated, or converted the money to his own use. But, to say to the jury that keeping the money in his house, thereby depriving the county of its use, was a conversion and embezzlement of it, took from the jury the right to determine the question of fact as to *418 whether or not he intended to convert and embezzle it. That was erroneous and prejudicial.
The judgment and verdict of the court below will be reversed and the cause remanded for a new trial.

Judgment reversed, and cause remanded.

Shohl, P. J., and Hamilton, J., concur.